BLANK ROME LLP
Travis K. Jang-Busby (SBN 283256)
Travis.JangBusby@BlankRome.com
Nicole Wentworth (SBN 334007)
nicole.wentworth@blankrome.com
2029 Century Park East, 6th Floor
Los Angeles, CA 90067
Telephone:  424.239.3400
Facsimile:   424.239.3434

Attorneys for Defendant
TAPIS CORPORATION

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW NICHOLLS, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>TAPIS CORPORATION, a New York Corporation; and DOES 1 through 10; inclusive,<br><br>Defendant. | Case No. 5:25-cv-00870-JGB-SP<br><br>[Removed from Superior Court of California, County of Riverside, Case No. CVME2500096]<br><br>**JOINT STIPULATION REGARDING TAPIS CORPORATION'S MOTION TO COMPEL MATTHEW NICHOLLS' FURTHER RESPONSES TO (1) INTERROGATORIES, SET ONE; AND (2) REQUESTS FOR PRODUCTION, SET ONE**<br><br>**[DISCOVERY MATTER]**<br><br><u>Hearing</u><br>Date: March 24, 2026<br>Time: 11:00 a.m.<br>Location: George E. Brown, Jr. Federal Building and United States Courthouse, Riverside Courtroom 4, 3rd Floor<br><br>Discovery Cutoff: May 4, 2026<br>Pre-Trial Conference: August 24, 2026<br>Trial Date: September 8, 2026 |

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

Plaintiff and Cross-Defendant Matthew Nicholls ("Nicholls") and Defendant and Cross-Complainant Tapis Corporation ("Tapis") (collectively, the "Parties") hereby submit this Joint Stipulation pursuant to Local Rule 37. Pursuant to Local Rule 37-2.1, a copy of the Court's September 12, 2025 Civil Trial Scheduling Order establishing the initial case schedule is attached to this Stipulation as **Exhibit A**. [ECF 32.]

## I.    TAPIS' INTRODUCTORY STATEMENT

This case centers around Tapis' trade secret claims against Nicholls, its former Sales Director. While Nicholls was still employed by Tapis, he downloaded and copied Tapis' internal and highly sensitive documents to his personal devices. Nicholls did not deny downloading Tapis' confidential or proprietary information and instead purported to have downloaded the files for the purposes of performing his job duties, despite such actions being both atypical and far outside the ordinary course or scope of his job duties.

Unsurprisingly, just one month after Nicholls' employment with Tapis ended, Nicholls went to work for Tapis' largest competitor, Perrone, as its Vice President of Marketing. Tapis alleges that Nicholls intentionally downloaded and has retained Tapis' internal and highly sensitive documents for his own personal benefit and against Tapis' instruction (and contrary to the terms of his confidentiality agreement), and specifically for the purposes of retaining these documents when he transitioned to work for Perrone and/or to otherwise compete with Tapis for his own financial gain.

There is no dispute that Nicholls downloaded and copied Tapis' internal and highly sensitive documents to his personal devices. The only dispute is whether Nicholls deleted these documents as he contends, or whether he has retained these documents and/or shared them with Perrone or other third-parties. Accordingly, Tapis served inspection demands requesting that Nicholls produce his personal devices for inspection by a forensic expert to determine whether the files Nicholls

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

downloaded were copied or transfer to any other devices. Nicholls has refused to produce his devices for inspection.

Additionally, Tapis served requests for production or documents and interrogatories seeking basic documents and information directly relevant to Tapis' trade secret claims. These discovery demands include (1) requests for the production of documents in Nicholls' possession relating to Tapis' customers, documents Nicholls shared with Perrone during his employment with Tapis, and Nicholls' communications with Perrone during his employment with Tapis; and (2) interrogatories requesting that Nicholls describe any development of Perrone's business using information obtained and/or derived from Tapis, identify any Tapis customers that Nicholls has been in contact with since his departure from Tapis, and identify Perrone customers that Nicholls was in contact with at the end of his employment with Tapis. Nicholls has refused to respond to any of these requests.

Nicholls contends that he is not required to respond to any discovery on Tapis' trade secret claims until Tapis has made a "reasonably particularized" trade secret disclosure.[1] Nicholls' refusal to engage in discovery is improper because, among other reasons, Tapis *has* sufficiently identified the trade secrets that it alleges were misappropriated in response to Nicholls' First Set of Interrogatories. Tapis also explicitly narrowed its trade secret disclosure to those documents identified in its discovery response at the request of Nicholls' counsel. Despite these good faith efforts, Nicholls has refused to provide responses and produce the documents and items requested for inspection in response to Tapis' discovery demands, necessitating motion practice.

///

///

---

[1] This is despite the fact that Nicholls did not make any mention of the alleged necessity for a trade secret disclosure before discovery commenced on Tapis' Counterclaim in the parties' Joint Rule 26(f) Report or otherwise prior to objecting to Tapis' discovery requests. [ECF 28.]

3

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

## II.    NICHOLLS' INTRODUCTORY STATEMENT

This is a wage-and-hour case brought by Matthew Nicholls against his former employer, Tapis Corporation, for failure to pay overtime and earned commissions and for retaliating after he complained. Nicholls seeks unpaid compensation, statutory penalties, and damages arising from Tapis's interference with his professional reputation.

Rather than defend those claims on the merits, Tapis has asserted patently frivolous trade secret counterclaims based on computer files that existed on an Apple laptop Nicholls returned at the conclusion of his employment. Those files consist entirely of nonconfidential material, including publicly available industry and academic articles, royalty-free PowerPoint templates, resumes downloaded from Indeed.com, publicly distributed supplier presentations, and even copyrighted music files by the band The Weeknd. (Declaration of Matthew Nicholls ("Nicholls Decl."), ¶¶ 11-12 and Exh. A thereto.)

Without explanation, Tapis states in a verified interrogatory response that each of these files constitutes a "trade secret." Yet despite multiple meet-and-confer discussions and a clear statutory obligation under Code of Civil Procedure § 2019.210, Tapis has not identified a single specific trade secret allegedly misappropriated. (Declaration of Corbett H. Williams ("Williams Decl."), ¶¶ 3-5, 11 and Exh. A thereto.)

During his employment, Nicholls was authorized to access Tapis's shared Google Drive to prepare presentations, respond to customer inquiries, and perform routine sales functions. Upon termination, he deleted all Tapis data and returned his company-issued laptop. He has not disclosed or used any Tapis information since leaving. (Nicholls Decl., ¶¶ 3-7.)

Tapis's purported "disclosure" consists solely of an Excel spreadsheet—TAP000598—listing file names and directory paths from the returned laptop. The spreadsheet does not describe file contents, identify which files allegedly contain

trade secrets, or explain how any information derives independent economic value from secrecy. Instead, Tapis relies on vague categorical labels such as "sales," "marketing," and "customer information." (Williams Decl., ¶ 5, 11 and Exhibit A thereto.)

Nicholls reviewed TAP000598 line by line. The 863 entries consist overwhelmingly of public or non-proprietary materials, including PowerPoint templates (many created by Nicholls or purchased from third parties), supplier presentations intended for public-facing use, Indeed.com job postings, Airbus and Boeing market reports, public conference materials, publicly hosted research papers, and commercially released music files. None constitute confidential trade secrets. **Exhibit A** to Nicholls's declaration provides a detailed description of each listed file. (Nicholls Decl., ¶ 11 and Exh. A thereto.)

Rather than identify any specific protectable information, Tapis seeks unfettered forensic access to Nicholls's personal cellular telephone, home computer, and personal iCloud and Dropbox accounts—devices and accounts containing highly private, unrelated material, including medical records, financial information, and attorney-client communications. (Nicholls Decl., ¶ 13.) The trade secret disclosure requirement exists precisely to prevent such fishing expeditions.

Tapis has not identified a single trade secret. It has pointed only to a directory listing of nonconfidential materials and demanded unrestricted access to Nicholls's private digital life. Although Nicholls has agreed during meet-and-confer discussions to permit a narrowly tailored search of his devices tied to properly identified trade secrets, Tapis has failed to identify any. (Williams Decl., ¶¶ 7-12 and Exhs. B, C and D thereto.)

## III. DISCOVERY ISSUES IN DISPUTE

The discovery issues in dispute are limited to Nicholls' refusal to produce items requested in response to the following Requests for Inspection, Nicholls' refusal to respond to or produce documents in response to the following Requests for

Production of Documents, and Nicholls' refusal to respond to the following Interrogatories:

<strong><u>REQUESTS FOR INSPECTION</u></strong>

**<u>REQUEST FOR INSPECTION NO. 1:</u>**

YOUR PERSONAL ELECTRONIC DEVICES (including but not limited to YOUR MacStudio, iPhone, and external hard drive(s)) at a mutually agreed time and place by an expert designated by TAPIS.

**<u>RESPONSE TO REQUEST FOR INSPECTION NO. 1:</u>**

Plaintiff objects to this request on the grounds that TAPIS has failed to define the purported trade secrets that are the subject of its CUTSA and DTSA claims as required in mixed trade secret misappropriation cases by courts in the Ninth Circuit. *See e.g.*, *Commure Inc. v. Canopy Works Inc.*, 2025 WL 1150695, at *2–3 (N.D. Cal. Apr. 18, 2025); *Alta Devices Inc. v. LG Elecs. Inc.*, 2019 WL 176261, at *2 (N.D. Cal. Jan. 10, 2019); *HarcoSemco LLC v. Herber Aircraft Serv., Inc.*, 2025 WL 2020009, at *5 (C.D. Cal. June 20, 2025); *Wilson Aerospace LLC v. Boeing Co.*, 2025 WL 2733893, at *3 (W.D. Wash. Sept. 25, 2025); *Social Apps LLC v. Zynga Inc.*, 2012 WL 2203063, at *2–3 (N.D. Cal. June 14, 2012).

Plaintiff objects to this request on the grounds that it is overly broad, unduly burdensome, and seeks inspection of personal electronic devices that contain private, confidential, and privileged information protected by the attorney-client privilege and attorney work product doctrine. Plaintiff further objects on the grounds that this request violates Plaintiff's constitutional right to privacy and seeks access to personal information unrelated to the claims and defenses in this action.

Plaintiff objects that the request is not proportional to the needs of the case and that the burden and expense of allowing forensic examination of personal devices by TAPIS's expert outweighs any probative value. Plaintiff further objects that TAPIS has not demonstrated that less intrusive means of obtaining relevant information are unavailable.

6

Plaintiff objects that the request seeks inspection of devices that may contain attorney-client communications, work product materials, personal financial information, medical records, and other confidential information that is not relevant to the claims or defenses in this action.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff has already returned all TAPIS property, including the company-provided MacBook, and has provided evidence of secure deletion (using file deletion software) of any TAPIS files that were temporarily stored on personal devices.

With respect to Plaintiff's personal electronic devices and external hard drives, no inspection will occur unless and until TAPIS fully complies with its obligation to identify its alleged trade secrets with *reasonable particularity*. Upon service of an adequate trade secret disclosure, Plaintiff will permit a narrowly tailored inspection of any personal devices or drives that may contain data obtained from TAPIS. Such inspection shall be conducted by a neutral forensic expert mutually agreed upon by the parties or appointed by the Court, pursuant to appropriate protocols designed to safeguard privileged, confidential, and private information. The scope of the inspection shall be expressly limited to searching for specifically identified TAPIS files or data, and shall not constitute a general forensic examination. Plaintiff reserves the right to review any materials identified by the expert as potentially responsive before production and to object to the disclosure of any particular file or document, subject to the Court's review and determination.

**REQUEST FOR INSPECTION NO. 2:**

All passwords and passcodes sufficient to permit forensic imaging of the PERSONAL ELECTRONIC DEVICES in Request for Inspection No. 1.

///

///

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

**RESPONSE TO REQUEST FOR INSPECTION NO. 2:**

Plaintiff objects to this Request on the grounds that: (1) it is overly broad, unduly burdensome, and oppressive; (2) it seeks information that is private, confidential, and protected by the attorney-client privilege and attorney work product doctrine; (3) it seeks highly sensitive personal information including banking records, tax records, personal passwords, and other private data that is not relevant to the claims or defenses in this action and not reasonably calculated to lead to the discovery of admissible evidence; (4) it violates Plaintiff's fundamental right to privacy; (5) it is disproportionate to the needs of the case; (6) the request seeks to compel production of passwords and passcodes which would compromise the security of Plaintiff's personal devices and accounts containing privileged communications with counsel and other confidential information; (7) the Request is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclam; and (8) the Request is improper to the extent it purports to require Plaintiff to create documents not already in his possession, custody, or control.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: Plaintiff has already returned all company property to Tapis Corporation and has deleted all company information from personal devices as documented in correspondence dated August 2024. Plaintiff has provided written certification of compliance with all obligations regarding company information. Any personal electronic devices contain only personal information, privileged attorney-client communications, and litigation-related materials. Plaintiff will not provide passwords or passcodes to personal devices as such disclosure would violate attorney-client privilege, compromise personal privacy, and is not proportional to the needs of this case.

Upon service of an adequate trade secret disclosure, Plaintiff will permit a narrowly tailored inspection of any personal devices or drives that may contain data

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

obtained from TAPIS. Such inspection shall be conducted by a neutral forensic expert mutually agreed upon by the parties or appointed by the Court, pursuant to appropriate protocols designed to safeguard privileged, confidential, and private information. The scope of the inspection shall be expressly limited to searching for specifically identified TAPIS files or data, and shall not constitute a general forensic examination. Plaintiff reserves the right to review any materials identified by the expert as potentially responsive before production and to object to the disclosure of any particular file or document, subject to the Court's review and determination.

**REQUEST FOR INSPECTION NO. 3:**

YOUR CLOUD STORAGE ACCOUNTS (including but not limited to DropBox, Box, and Google Drive) at a mutually agreed time and place by an expert designated by TAPIS.

**RESPONSE TO REQUEST FOR INSPECTION NO. 3:**

Plaintiff objects to this request on the grounds that TAPIS has failed to define the purported trade secrets that are the subject of its California Uniform Trade Secrets Act ("CUTSA") and Defend Trade Secrets Act ("DTSA") claims as required in mixed trade secret misappropriation cases by courts in the Ninth Circuit. *See e.g.*, *Commure Inc. v. Canopy Works Inc.*, 2025 WL 1150695, at *2–3 (N.D. Cal. Apr. 18, 2025); *Alta Devices Inc. v. LG Elecs. Inc.*, 2019 WL 176261, at *2 (N.D. Cal. Jan. 10, 2019); *HarcoSemco LLC v. Herber Aircraft Serv., Inc.*, 2025 WL 2020009, at *5 (C.D. Cal. June 20, 2025); *Wilson Aerospace LLC v. Boeing Co.*, 2025 WL 2733893, at *3 (W.D. Wash. Sept. 25, 2025); *Social Apps LLC v. Zynga Inc.*, 2012 WL 2203063, at *2–3 (N.D. Cal. June 14, 2012).

Plaintiff objects to this request on the grounds that it is overly broad, burdensome, and seeks inspection of private personal accounts and devices that contain privileged, confidential, and personal information unrelated to this litigation. Plaintiff objects to this request to the extent it seeks access to documents that are protected by the attorney-client privilege, attorney work product doctrine,

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

or any other applicable privilege or protection provided by law.

Plaintiff further objects to this request on the grounds that it is not proportional to the needs of the case and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. The request seeks unfettered access to personal cloud storage accounts that may contain personal, family, medical, financial, and other private information that has no bearing on the claims or defenses in this case.

Plaintiff objects to this request on the grounds that it violates Plaintiff's reasonable expectation of privacy and constitutional rights. The request seeks inspection of personal cloud storage accounts that may contain sensitive personal information, communications with family members, medical records, financial information, and other private matters unrelated to this litigation.

Plaintiff further objects to this request as it seeks to allow TAPIS' expert to conduct a fishing expedition through Plaintiff's personal digital accounts without any showing of relevance or necessity. The request lacks adequate safeguards to protect privileged and confidential information.

Plaintiff objects to this request on the grounds that it is premature, as discovery is ongoing and less intrusive means of obtaining relevant information have not been exhausted.

As stated, Plaintiff has already returned all company property to TAPIS, including the company laptop, and has provided evidence of secure deletion of any company files that were downloaded for legitimate work purposes during his employment. Plaintiff has demonstrated compliance with his obligations to return company property and delete company information.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  With respect to Plaintiff's web-based storage accounts, no inspection will occur unless and until TAPIS fully complies with its obligation to identify its alleged trade secrets with *reasonable particularity*. Upon service of an adequate

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1

trade secret disclosure, Plaintiff will permit a narrowly tailored inspection of any accounts that may contain data obtained from TAPIS. Such inspection shall be conducted by a neutral forensic expert mutually agreed upon by the parties or appointed by the Court, pursuant to appropriate protocols designed to safeguard privileged, confidential, and private information. The scope of the inspection shall be expressly limited to searching for specifically identified TAPIS files or data, and shall not constitute a general forensic examination. Plaintiff reserves the right to review any materials identified by the expert as potentially responsive before production and to object to the disclosure of any particular file or document, subject to the Court's review and determination.

**REQUEST FOR INSPECTION NO. 4:**

All passwords and passcodes sufficient to permit forensic imaging of the CLOUD STORAGE ACCOUNTS in Request for Inspection No. 3.

**RESPONSE TO REQUEST FOR INSPECTION NO. 4:**

Plaintiff objects to this Request on the grounds that: (1) it is overbroad and unduly burdensome as it seeks passwords and passcodes to all cloud storage accounts without limitation; (2) it seeks information that is private, confidential, and protected by privacy rights; (3) it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence; (4) it is premature as the underlying Request for Inspection No. 3 has not been resolved; (5) it seeks information that could compromise the security of personal accounts and private information unrelated to this litigation (6) it violates basic principles of data security and privacy protection; (7) the Request is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclam; and (8) the Request is improper to the extent it purports to require Plaintiff to create documents not already in his possession, custody, or control.

As stated, Plaintiff has already returned all company property to TAPIS,

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

including the company laptop, and has provided evidence of secure deletion of any company files that were downloaded for legitimate work purposes during his employment. Plaintiff has demonstrated compliance with his obligations to return company property and delete company information.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:  Plaintiff will not provide passwords or passcodes to personal devices or online accounts as such disclosure would violate attorney-client privilege, compromise personal privacy, and is not proportional to the needs of this case. With respect to Plaintiff's web-based storage accounts, no inspection will occur unless and until TAPIS fully complies with its obligation to identify its alleged trade secrets with *reasonable particularity*. Upon service of an adequate trade secret disclosure, Plaintiff will permit a narrowly tailored inspection of any accounts that may contain data obtained from TAPIS. Such inspection shall be conducted by a neutral forensic expert mutually agreed upon by the parties or appointed by the Court, pursuant to appropriate protocols designed to safeguard privileged, confidential, and private information. The scope of the inspection shall be expressly limited to searching for specifically identified TAPIS files or data, and shall not constitute a general forensic examination. Plaintiff reserves the right to review any materials identified by the expert as potentially responsive before production and to object to the disclosure of any particular file or document, subject to the Court's review and determination.

### REQUESTS FOR THE PRODUCTION OF DOCUMENTS

### REQUEST FOR PRODUCTION NO. 1:

All DOCUMENTS RELATING TO any current or former TAPIS customer, partner, or client created or distributed from May 1, 2024 to present.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Plaintiff objects to this Request on the grounds that: (1) it is vague, ambiguous, and overbroad, including as to scope; (2) it is unduly burdensome and oppressive as

to scope; (3) it is overbroad because it fails to identify the documents sought with reasonable particularity; (4) it seeks documents that contain confidential business information and sensitive financial information; (5) it is beyond the scope of permissible discovery, particularly to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; and (6) as drafted, it seeks discovery of information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection; (7) the Request is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclaim; (8) the Request seeks confidential information and documents belonging to third parties; and (9) the Request is not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case.

**REQUEST FOR PRODUCTION NO. 2:**

All DOCUMENTS shared between or among YOU and PERRONE from May 1, 2024 to September 30, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Plaintiff objects to this Request on the grounds that: (1) it is vague, ambiguous, and overbroad, including as to scope; (2) it is unduly burdensome and oppressive; (3) it seeks documents that may contain confidential business information; (4) as drafted, it seeks discovery of information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection; (5) the Request is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclam; (8) the Request seeks confidential information and documents belonging to third parties; and (9) it is not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case.

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

**REQUEST FOR PRODUCTION NO. 3:**

All COMMUNICATIONS between or among YOU and PERRONE from May 1, 2024 to September 30, 2024.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Plaintiff objects to this Request on the grounds that: (1) it is overbroad as to scope; (2) it seeks documents that are private, confidential, or protected by the attorney-client privilege or attorney work product doctrine; (3) it seeks information which is not relevant or reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks communications outside the relevant time period for the claims in this action; and (4) the Request is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclaim; (5) the Request seeks confidential information and documents belonging to third parties; and (6) it is not reasonably calculated to lead to the discovery of admissible evidence and is not proportional to the needs of the case.

## INTERROGATORIES

**INTERROGATORY NO. 3:**

DESCRIBE all steps taken by YOU to develop PERRONE's business, such as PERRONE's technology, business model, go-to-market strategy and funding, including the sources of information, market research, industry contacts relied upon, and whether any such steps involved the use of data, code, algorithms, documentation, or other information obtained and/or derived from TAPIS.

**RESPONSE TO INTERROGATORY NO. 3:**

Nicholls objects to this interrogatory because and to the extent that: it is vague, ambiguous, and overbroad as to the phrase "develop PERRONE's business"; it seeks third-party private, confidential and/or trade secret information, confidential information and/or information protected by attorney-client and/or attorney work product privilege; it is compound in nature seeking multiple categories of

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

information; it seeks information equally or more accessible to the requesting party than to the responding party; it calls for speculation regarding the sources and derivation of information; it is propounded in furtherance of TAPIS's counterclaims, including under the CUTSA and DTSA in the absence of a reasonably particularized disclosure of the purported trade secrets that are the subject of those claims; it is unduly burdensome and compound; it seeks confidential business information belonging to third parties, including competitors of TAPIS; and it is not reasonably calculated to lead to the discovery of admissible evidence and is not proportionate to the needs of the case.

**INTERROGATORY NO. 1:**

IDENTIFY all TAPIS customers, including prospective customers, with which YOU have had contact since August 14, 2024.

**RESPONSE TO INTERROGATORY NO. 4:**

Nicholls objects to this interrogatory because and to the extent that: it is vague and ambiguous as to the term "contact"; it is overbroad and unduly burdensome; it seeks confidential information and/or information protected by attorney-client and/or attorney work product privilege; it seeks information equally or more accessible to the requesting party than to the Nicholls; it is propounded in furtherance of TAPIS's counterclaims, including under the CUTSA and DTSA in the absence of a reasonably particularized disclosure of the purported trade secrets that are the subject of those claims; it seeks confidential business information belonging to third parties, including competitors of TAPIS; and it is not reasonably calculated to lead to the discovery of admissible evidence and is not proportionate to the needs of the case.

**INTERROGATORY NO. 2:**

IDENTIFY all PERRONE customers, including prospective customers, with which YOU have had contact since May 1, 2024.

///

///

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1

**RESPONSE TO INTERROGATORY NO. 5:**

Nicholls objects to this interrogatory on the grounds that: (1) it is vague and ambiguous as to the phrase "have had contact"; (2) it is overbroad and unduly burdensome; (3) it seeks information that is not relevant to the subject matter of this litigation and not reasonably calculated to lead to the discovery of admissible evidence; (4) it seeks information equally or more accessible to the requesting party than to the responding party; (5) it is inappropriate and premature because TAPIS has made no reasonably particularized disclosure of the purported trade secrets that are the subject of is Counterclaim; and (6) it seeks confidential business information belonging to third parties, including competitors of TAPIS and it is not reasonably calculated to lead to the discovery of admissible evidence and is not proportionate to the needs of the case.

## IV.    TAPIS' ARGUMENT

### A. The Parties' Meet and Confer Efforts and Nicholls' Refusal to Respond or Produce Items or Documents for Inspection

On September 25, 2025, Tapis served its First Set of Interrogatories and First Set of Requests for Production to Nicholls. (Declaration of Nicole Wentworth ("Wentworth Dec."), ¶ 3, Exs. 1-2.) On October 27, 2025, Nicholls served his objections and responses. (*Id.*, ¶ 4, Exs. 3-4.) Nicholls refused to respond or produce documents and items in response to each of the interrogatories and requests outlined in Section III, *supra*, contending that Tapis was not entitled to conduct discovery on its trade secret claims because it had not yet made a "reasonably particularized disclosure" of its misappropriated trade secrets. (*Id*, Exs. 3-4.)

On November 18, 2025, Tapis sent a pre-motion letter to Nicholls' counsel pursuant to Local Rule 37-1, requesting a conference of counsel regarding Nicholls' refusal to respond to the discovery demands outlined in Section III, *supra*, among others. (Wentworth Dec., ¶ 5, Ex. 5.) On December 3, 2025, the Parties met for an in-person conference of counsel and were able to resolve some of their discovery

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

disputes. (*Id.*, ¶ 6.) Because one of Nicholls' counsel, Corbett Williams, did not appear for the in-person conference, the Parties had an additional video conference of counsel on December 12, 2025. (*Id.*, ¶ 7.) At this conference, the Parties agreed that Tapis would first provide a further response to Nicholls' interrogatory requesting that Tapis describe its trade secrets, which further response would explicitly narrow Tapis' trade secret disclosure to the documents identified in Tapis' initial interrogatory response. (*Id.*, ¶ 8.) The Parties agreed that after this narrowing, Nicholls would provide further responses and produce the documents and items requested for inspection in response to Tapis' discovery demands. (*Id.*)

On January 14, 2026, Tapis served further responses to Nicholls' discovery requests regarding Tapis' trade secret claims, as agreed. (Wentworth Dec., ¶ 9, Ex. 6.) Thereafter, on January 22, 2026, Tapis' counsel sent an email to Nicholls' counsel requesting that Nicholls provide further responses, produce responsive documents, and produce his personal devices for inspection, as agreed, by no later than February 4, 2026 (three weeks from the date of Tapis' further responses). (*Id.*, ¶ 10, Ex. 7.) Because Nicholls' counsel did not respond to this email, Tapis' counsel sent a follow-up email on February 2, 2026. (*Id.*, ¶ 11, Ex. 7.) Nicholls' counsel, Mr. Williams, spoke with Tapis' counsel by phone and responded by email the same day, confirming Nicholls' continued refusal to respond to Tapis' discovery demands. (*Id.*, ¶ 12, Ex. 7.) The Parties then had another video conference on February 6, 2026, where the disputed discovery was discussed again, but the Parties were unable to reach a resolution. (*Id.*, ¶ 13.)

Based on the above, the Parties have met and conferred in good faith regarding the issues set forth herein and cannot reach an agreement on this discovery dispute. The Parties have met their Prefiling Conference of Counsel obligations under L.R. 37-1 and were successful in resolving some of the initial disputes with respect to the Discovery. However, they were unable to resolve the outstanding issues that are now the subject of Tapis' request herein. Tapis now seeks the following:

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

- Responses and the production of the items requested in response to Tapis' Requests for Inspection Nos. 1-4

- Responses and the production of the documents requested in response to Tapis' Requests for Production of Documents Nos. 7, 9, and 10

- Responses to Tapis' Interrogatory Nos. 3-5

**B. Nicholls' Objections Regarding Trade Secret Discovery Are Improper**

Nicholls' refusal to respond to Tapis' discovery on its trade secret claims is primarily based on his position that he is not required to respond to any discovery on Tapis' trade secret claims until Tapis has made a "reasonably particularized" trade secret disclosure. Nicholls' objections are misplaced because the federal "DTSA does not set out requirements for the specific timing or scope for identifying trade secrets. Instead, the conventional procedures under the Federal Rules of Civil Procedure apply." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087 (9th Cir. 2025). There is no binding authority requiring discovery staging in federal DTSA claims. *See Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-AMO (TSH), 2023 WL 4045234, at *1 (N.D. Cal. June 15, 2023) (stating the "DTSA itself does not require sequencing of discovery such that the alleged trade secrets must be disclosed before discovery about trade secrets may proceed"). The absence of a DTSA provision incorporating any discovery procedure analogous to state law statutory requirements in trade secret cases "supports the inference that a plaintiff whose DTSA claims proceed past the pleading stage [as here] is entitled to discovery in accordance with the general discovery rules set forth in Federal Rule of Civil Procedure 26." *Id.*; *see also Yeiser Research & Dev., LLC v. Teknor Apex Co.*, No. 17-CV-1290-BAS-MSB, 2019 WL 2177658 at *4 (S.D. Cal. May 20, 2019).

The Ninth Circuit "has not decided whether Section 2019.210 must be applied by district courts hearing CUTSA claims, and district courts that have considered the issue have handled the application of Section 2019.210 in various ways." *Masimo Corp. v. Apple Inc.*, No. 8:20-CV-00048-JVS (JDEX), 2020 WL 5223558, at *4

18

(C.D. Cal. June 15, 2020) (collecting cases). In any event, the DTSA requires a plaintiff to identify a trade secret with "sufficient particularity" as a matter of fact, unlike CUTSA's "reasonable particularity" rule. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088-1089 (9th Cir. 2025). For this reason, the DTSA does not require a detailed disclosure until the summary judgment stage or at trial, because the level of disclosure is a factual question. *Id.* at 1087.

Even under California law, "'reasonable particularity' mandated by the CUTSA does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation." *Advanced Modular Sputtering, Inc. v. Super. Ct.* (2005) 132 Cal.App.4th 826, 835. Nor is Tapis required to describe its trade secrets "with the greatest degree of particularity possible" or "to an exacting level of specificity" agreeable to Nicholls. *Id.* at 836. California courts liberally construe trade secret designations with any "reasonable doubts about its sufficiency" resolved in favor of the adequacy of the disclosure. *See Brescia v. Angelin* (2009) 172 Cal.App.4th 133, 149.

Regardless of the applicable law as to the timing and scope of Tapis' trade secret disclosure, Nicholls' objections on this basis are improper because Tapis *has* sufficiently identified the trade secrets that it alleges were misappropriated on September 18, 2025, in response to Nicholls' First Set of Interrogatories. At the request of Nicholls' counsel, Tapis also explicitly narrowed its trade secret disclosure to those documents identified in its initial discovery response in a further response served on January 22, 2026. If Nicholls disagrees with the *sufficiency* of Tapis' trade secret disclosure, his recourse is to seek a protective order or file a dispositive motion as to Tapis' trade secret claims – not to refuse to comply with his basic discovery obligations.

///

///

///

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

## C. Nicholls' Remaining Objections Also Fail

### 1. Nicholls' Objections to Tapis' Requests for Inspection Are Unsupported

Nicholls' remaining objections to Tapis' requests for inspection fail. Nicholls attempts to insist that the forensic imaging of Nicholls' devices and accounts be "conducted by a neutral forensic expert mutually agreed upon by the parties or appointed by the Court, pursuant to appropriate protocols designed to safeguard privileged, confidential, and private information." (Wentworth Dec., ¶ X, Ex. X.) There is no basis for Nicholls' insistence on a "neutral" expert. Tapis is entitled to have its own forensic expert conduct an inspection of Nicholls' devices to search for Tapis files. Moreover, the Parties' have already entered into a stipulated protective order which provides the "appropriate protocols" to safeguard any purportedly privileged, confidential, or private information. [ECF 38.] The order specifically provides for experts to receive confidential information as long as they review and sign the order. [ECF 38.]

Nicholls' remaining objections to Tapis' inspection requests are nonsensical. A forensic imaging of Nicholls' devices and cloud storage accounts is necessary for Tapis to litigate its Counterclaim, and the only way for Tapis to determine what documents Nicholls retained on his personal devices after he mass downloaded them from Tapis' drives and his Tapis computer, and what Nicholls did with those files thereafter. There is no "less intrusive" means of obtaining this information, and forensic imaging is extremely common in trade secret disputes like this one.

Nicholls has no grounds on which to refuse to respond to produce his personal devices for a forensic inspection.

### 2. Nicholls' Objections to Tapis' Requests for Production of Documents Are Inapplicable

Nicholls objects to Tapis' Request for Production No. 7, which requests the production of documents in Nicholls' possession relating to Tapis' customers, on

several additional inapplicable grounds. The Request it is narrowly tailored to the end of Nicholls' employment with Tapis, does not call for the production of any confidential business information (except, perhaps, of Tapis' own information, which is not an issue) or privileged communications, and is directly relevant to Tapis' Counterclaim: it seeks the production of documents evidencing that Nicholls was communicating with Tapis contacts improperly as he planned his exit from the company. Each of these objections must be disregarded.

Nicholls additional objections to Tapis' Request for Production Nos. 9 & 10 are similarly inapplicable. These Requests ask for documents shared and communications between Nicholls and Perrone from May 1, 2024 to September 30, 2024 – i.e., during the end of Nicholls' employment with Tapis. The Requests are narrowly tailored to a five month window prior to Nicholls' employment with Perrone, meaning no confidential information of Perrone's would be encompassed by the Requests (and even if they were, those documents could be marked as such under the parties' protective order), nor any privileged communications. And again, the Requests are directly relevant to Tapis' Counterclaim: they seek the production of documents evidencing that Nicholls was improperly communicating with Perrone prior to his departure from Tapis. Again, each of the remaining objections must be disregarded.

### 3.  **Nicholls' Objections to Tapis' Interrogatories**

Nicholls remaining objections to Tapis' Interrogatories also fail. Interrogatory No. 3 requests that Nicholls describe any steps taken with respect to developing Perrone's business using information obtained and/or derived from Tapis. Nicholls objects to this Interrogatory on the grounds that it calls for the disclosure of confidential business information, but again, even if it did, the parties entered into a stipulated protective order providing for the confidential designation of such information for this very purpose. [ECF 38.] Nicholls' other objections are inapplicable: the Interrogatory does not call for privileged information, is not

compound, and does not call for speculation.

As for Interrogatory Nos. 4 and 5, these request that Nicholls identify any Tapis customers that he has been in contact with since August 14, 2024 (i.e., the end of his employment with Tapis) and any Perrone customers with which he has had contact since May 1, 2024 (i.e., at the end of his employment with Tapis). Again, Nicholls' objections are inapplicable. Interrogatory No. 4 it does not seek the disclosure of privileged information or confidential business information of any entity other than Tapis and its customers, and the disclosure of any Perrone customers identified in response to Interrogatory No. 5 would be covered by the parties' protective order if the identity of its customers were properly considered confidential. Additionally, the identify of persons *Nicholls* has been in contact with is not "more accessible" or "equally accessible" to Tapis, nor is this a proper basis on which to refuse to respond to discovery.

Nicholls has no additional grounds on which to refuse to respond to these Interrogatories.

### D. Conclusion

Based on the foregoing, Tapis respectfully requests that the Court enter an Order compelling Nicholls to produce his personal devices for inspection, produce responsive documents, and provide further written responses in response to Tapis' Requests for Inspection Nos. 1-4, Requests for Production of Documents Nos. 7, 9, and 10, and Responses to Tapis' Interrogatory Nos. 3-5 within ten (10) days of the hearing on this matter.

## V. NICHOLLS' ARGUMENT

### A. Tapis Must Identify All Trade Secrets that Are the Subject of its Claims with Reasonable Particularity Before Obtaining Discovery

A plaintiff asserting claims under the California Uniform Trade Secrets Act ("CUTSA") must identify its alleged trade secrets with reasonable particularity before obtaining discovery on those claims. Cal. Code Civ. Proc. § 2019.210. Federal

22

courts in California consistently enforce this requirement as a threshold prerequisite to discovery. *Commure Inc. v. Canopy Works Inc.*, 2025 WL 1150695, at *2–3 (N.D. Cal. 2025) ("before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity"); *Poynt Corp. v. Innowi Inc.*, 2019 WL 935499, at *3 (N.D. Cal. 2019); *Wescott v. Block*, 2022 WL 1136728, at *3–4 (N.D. Cal. 2022) ("the party alleging misappropriation [must] identify trade secrets with reasonable particularity before conducting discovery"); *Yeiser Research & Dev., LLC v. Teknor Apex Co.*, 2019 WL 2177658, at *5 (S.D. Cal. 2019) ("a federal court will look to state law trade secret discovery rules . . . to determine the proper course of discovery.").

Courts apply the same principles to parallel federal claims under the Defend Trade Secrets Act ("DTSA") claims where CUTSA and DTSA are asserted together. *See e.g.*, *HarcoSemco LLC v. Herber Aircraft Serv., Inc.*, 2025 WL 2020009, at *4 (C.D. Cal. 2025) ("the Court applies § 2019.210 to HarcoSemco's CUTSA claim . . . DTSA claims also require some definition of the asserted trade secrets."). *Poynt Corp.*, 2019 WL 935499, at *3 (directing that "the DTSA claim be addressed through the CCP's 2019.210 process.").

The purpose of Section 2019.210 is to promote well-investigated claims, deter meritless trade secret litigation, prevent fishing expeditions into a defendant's confidential information, and frame the proper scope of discovery. *Loop AI Labs Inc. v. Gatti*, 195 F.Supp.3d 1107, 1112 (N.D. Cal. 2016). *See also Social Apps LLC v. Zynga Inc.*, 2012 WL 2203063, at *2–3 (N.D. Cal. 2012) (rejecting cases declining to follow apply Section 2019.210; "The Court finds the reasoning of the cases applying section 2019.210 more persuasive. Section 2019.210 does not conflict with any Federal Rule of Civil Procedure but rather assists the court and parties in defining the appropriate scope of discovery."). The Ninth Circuit likewise requires that a trade secret claimant define the alleged secret before proceeding with discovery. *Imax Corp. v. Cinema Tech., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) ("A plaintiff

23

seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.1993)).

To satisfy the reasonable particularity requirement, a plaintiff must identify specific information—not broad subject areas or generalized categories such as "customer information," "pricing," or "marketing materials." Courts reject disclosures that rely on categorical descriptions, repositories, or undifferentiated file listings rather than articulating concrete, protectable information. *HarcoSemco LLC*, 2025 WL 2020009, at *5 (holding insufficient a trade secret disclosure spanning 72 pages; ("The Court will not "hunt through the details in search of items meeting the statutory definition. . . . A general description of the trade secrets is also insufficient."); *Wilson Aerospace LLC v. Boeing Co.*, 2025 WL 2733893, at *3 (W.D. Wash. 2025).

Compliance with § 2019.210 is a gatekeeping requirement. *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) ("Identifying trade secrets with sufficient particularity is important because defendants need "concrete identification" to prepare a rebuttal.") *See also id.* ("Courts and juries also require precision because . . . the district court or trier of fact will not have the requisite expertise to define what the plaintiff leaves abstract.")

A plaintiff may not use discovery to determine what its trade secrets are; it must identify them first. This principle applies with particular force where intrusive discovery—such as forensic inspection of electronic devices—is sought. Generalized descriptions, categorical labels, and directory listings do not satisfy the statute.

### B. Tapis Agreed to Provide a Particularized Trade Secret Disclosure but Failed to do so, Instead Relying on a File Directory Listing (TAP000598)

Tapis has been on notice since at least August 5, 2025—when Nicholls propounded interrogatories—that it was required to identify its alleged trade secrets

24

with reasonable particularity. In its September 18, 2025 Response to Nicholls's Interrogatory No. 1, Tapis objected that the request was vague and premature, then referred generally to paragraphs of its Counterclaim and to "TAP000598," asserting that all items listed in that document were trade secrets. It did not identify a single specific trade secret or describe any protectable information. (Williams Decl., ¶¶ 2-5.)

After meet-and-confer discussions—during which Tapis agreed it would identify the nature of each file listed in TAP000598—it served Further Responses on January 14, 2026. The further response repeated the same deficiency. Tapis' trade secret disclosure reads as follows:

> Tapis alleges that Nicholls misappropriated all of the items listed in TAP000598 from Tapis, which consists of business, social media, and marketing plans; customer quotes; marketing materials; sales presentations; project files; historical promotional materials; sales documentation; inventory lists; customer POs, work orders, certificates of conformance, packlists, and pricing details for orders processed and shipped; photographs sourced from customer contributions, company meetings, workshops, conferences, and other events; quality assurance test reports; inventory, lamination settings, quotes, and drawings for projects; customer lists, contact information, purchase history, and preferences and requirements; pricing models, negotiation strategies, discounts and profit margins; summaries of sales performance, booked orders, and commission details outlining revenue streams and sales strategies; financial forecasts and business projections; strategic plans for market expansion, product development, and competitive positioning; and technical product specifications, production techniques, and quality control measures.
> Tapis's trades [sic] secret disclosure is presently limited to the items listed in TAP000598. Discovery and investigation is ongoing, and Tapis reserves the right to supplement this disclosure.

**25**
**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

(Williams Decl., ¶¶ 7-12 and Exh. C thereto.) This does not satisfy § 2019.210.

Courts consistently reject disclosures that rely on categories, repositories, or file listings rather than identifying specific protectable information. *HarcoSemco*, 2025 WL 2020009, at *5; *Wilson Aerospace*, 2025 WL 2733893, at *3*. Nor may a plaintiff satisfy its obligation by pointing to a production set or directory listing. *Social Apps*, 2012 WL 2203063, at *2–3*; *Poynt*, 2019 WL 935499, at *3; *Commure*, 2025 WL 1150695, at *2–3.

TAP000598 underscores the defect. It is an Excel spreadsheet listing file names, paths, sizes, and dates from a Tapis-issued computer that Nicholls returned. It does not describe file contents, identify which files allegedly contain trade secrets, or explain what information derives independent economic value from secrecy. (Williams Decl., ¶ 5 and Exh. A thereto.)

Nicholls reviewed TAP000598 in detail. It includes numerous public-domain materials (including aerospace market reports and conference presentations), downloadable PowerPoint templates, materials Tapis itself publishes, routine administrative records, and even non-business files. Yet Tapis maintains that "all" 863 entries constitute trade secrets. That wholesale designation—untethered to any articulated protectable information—is precisely what courts reject. *Wescott*, 2022 WL 1136728, at *3–4; *Yeiser*, 2019 WL 2177658, at *5*; *Imax*, 152 F.3d at 1164. (Nicholls's Decl., ¶ 8-12, 16 and Exh. A thereto.)

Despite agreeing to identify the nature of each alleged trade secret, Tapis has repeated its original defective position. Until it provides a disclosure that complies with § 2019.210, it is not entitled to compel further discovery—much less intrusive forensic inspection of Nicholls's personal electronic devices. *Commure Inc.*, 2025 WL 1150695, at *2–3 ("before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity.").

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

**C. <u>None of the Documents Listed in TAP000598 Are Even Confidential, Much Less Constitute "Trade Secrets"</u>**

Tapis's reliance on TAP000598 as its purported "trade secret disclosure" does not satisfy § 2019.210. TAP000598 is simply an Excel spreadsheet listing file names and directory paths from a Tapis-issued laptop that was returned to the company. It does not describe file contents, identify any specific confidential information, or distinguish public materials from allegedly proprietary information. (Nicholls Decl. ¶¶ 8–10.)

The spreadsheet contains approximately 862 entries. (*Id.* ¶ 11.) The majority consist of public-domain materials, presentation templates, supplier-provided decks, or documents Nicholls himself created. (*Id.* ¶¶ 11–16.) Examples include:

- Publicly available aerospace market reports and forecasts published by Airbus, Boeing, Bombardier, and DVB Aviation Finance, including the Airbus *Global Market Forecast 2017–2036* and the *2017 Global Fleet MRO Market Forecast Summary* (rows 33–41);

- Public conference presentations and materials delivered at the APEX (Airline Passenger Experience Conference) and made available for public download to attendees (rows 111–258);

- PowerPoint template files created by Nicholls containing only formatting elements such as logos and fonts (rows 540–562; 793–799), and commercially available boilerplate templates purchased from SlidePro containing no proprietary information (rows 563–792);

- PowerPoint presentations created and produced by Ultrafabrics, a third-party supplier, and provided to Tapis for public-facing customer use (rows 800–851);

- Indeed.com job postings and resumes downloaded in connection with potential hiring activity (rows 87–101);

- Publicly available corporate materials posted on Tapis's own website, including AS and ISO certificates and credit application forms (rows 47–48; 61–62; 70), along with publicly available supplier warranty materials (row 77);

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1

- A spreadsheet listing publicly known airline-sponsored golf tournaments (row 25);

- Tapis-branded product images publicly available on Tapis's website (rows 350–374);

- Publicly available academic and industry research papers concerning aircraft passenger comfort and thermal materials, hosted on sites such as ResearchGate, Semantic Scholar, Academia.edu, and IOPScience (rows 5; 103–105; 853; 860–862); and

- Commercially released music files by The Weeknd from the Marvel/Disney motion picture *Black Panther* (rows 260–262).

(*Id.* ¶ 11, 16 and Exh. A thereto.)

Tapis nevertheless asserts that all entries in the spreadsheet constitute trade secrets. (Williams Decl., ¶¶ 11-12 and Exh. C thereto.) That wholesale designation—untethered to any identified protectable information—is precisely what § 2019.210 prohibits. Courts consistently reject attempts to satisfy the statute through repositories, categorical descriptions, or undifferentiated file listings. See *HarcoSemco*, 2025 WL 2020009, at *5; *Wilson Aerospace*, 2025 WL 2733893, at *3; *Poynt*, 2019 WL 935499, at *3.

Rather than identify any specific trade secret with reasonable particularity, Tapis seeks to leverage a directory listing into intrusive forensic access to Nicholls's personal devices. The disclosure requirement exists to prevent exactly this type of fishing expedition. Where the asserted "trade secrets" include public industry articles and reports, public domain slide templates, publicly disclosed conference materials, resumes from Indeed.com, and commercial music files, the claim is not merely deficient—it is patently frivolous.

///

///

///

**28**

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1

**D. Nicholls Has Agreed to a Targeted Forensic Examination—upon Service of a Proper Trade Secret Disclosure**

With respect to Tapis's Requests for Inspection 1-3 Nicholls has not refused forensic examination of his personal devices. He has agreed to make them available to a neutral third-party expert for a targeted review tied to a legally sufficient trade secret disclosure. That agreement has always been conditioned on Tapis first identifying, with reasonable particularity, the specific information it claims is a trade secret. (Williams Decl., ¶¶ 7-10, 15.)

Tapis has not done so. Instead, it relies on an undifferentiated spreadsheet declaring all 862 files to be trade secrets—including public-domain materials, routine business documents, template bundles, a golf spreadsheet, and even commercially released music files. (*Id.*, ¶¶ 5, 11 and Exhs. A and C thereto) (Nicholls Decl., ¶¶ 11, 16 and Exh. A thereto.) Without a proper disclosure defining the alleged secrets, there is no principled way to limit or structure a forensic search of Nicholls's personal phone and home computer, which contain private information unrelated to this case. Nicholls's position is simple and proportional: once Tapis complies with Section 2019.210 and identifies specific trade secrets, a narrowly tailored forensic review may proceed. Until then, there is no defined subject matter to search and no basis for compelling intrusive access to his personal devices.

**E. Tapis's Demand for Unfettered Access to Nicholls's Personal Smartphone and Cloud Storage Is Disproportionate to the Needs of the Case and a Gross Invasion of Privacy**

Tapis's Requests for Inspection Requests seek unfettered access to all of Nicholls's personal electronic devices — including his personal iPhone — and passwords to his personal cloud accounts, including Dropbox and iCloud. This is not targeted discovery; it is a demand for wholesale access to his digital life. As the Supreme Court has recognized, modern cell phones contain "the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014). Electronic data carries a significant

**29**

expectation of privacy because of its "uniquely sensitive nature." *United States v. Cotterman*, 709 F.3d 952, 966 (9th Cir. 2013). *See also*, *Henson v. Turn, Inc.*, 2018 WL 5281629, at *6 (N.D. Cal. 2018) ("While *Riley* was a criminal case, courts have applied its observations about the privacy concerns implicated by modern cell phones in the context of civil discovery as well."); *Jones v. Riot Hospitality Group LLC* (9th Cir. 2024) 95 F.4th 730, 737 ("there is a strong privacy interest in the contents of mobile phones."); *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1227 (9th Cir. 2019) ("[T]he interest in protecting privacy  applies with equal force to cellular devices.").

Federal Rule of Civil Procedure 26(b)(1) limits discovery to what is relevant and proportional. Proportionality requires courts to weigh the serious privacy and confidentiality interests implicated by forensic inspection of personal devices. *Henson*, 2018 WL 5281629, at *6–7 (denying forensic inspection where devices likely contained irrelevant, privileged, and private material); *J.T. v. City and County of San Francisco*, 2024 WL 3834200, at *4 (N.D. Cal. Aug. 14, 2024) (courts must guard against "undue intrusiveness" in inspecting electronic systems).

The intrusion is unjustified. Tapis has failed to identify a single trade secret with reasonable particularity. Instead, Tapis points to a list of more than 860 patently non-trade secret computer files, on the basis of which it claims the right to rifle through Nicholls's most intimate, private data, including medical records, financial documents, and attorney client communications.  (Nicholls's Decl., ¶ 13.)

Without a legally sufficient disclosure, there is no defined subject matter to search and no basis to compel surrender of personal devices and cloud credentials.

Nicholls has nevertheless agreed to permit imaging by a neutral third-party expert, limited to files tied to properly identified trade secrets. (Williams Decl., ¶¶ 7-10, 15.) Because Tapis has not identified any such files, there is presently no scope for a targeted search. Under these circumstances, compelling unfettered access would

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**
153205.00001/156068807v.1

be disproportional to the needs of the case and would sanction a gross invasion of Nicholls's privacy.

**F.** **Requests for Production Nos. 7, 9 and 10 and Interrogatories Nos. 3–5 Are Premature, Overbroad, and Impose an Improper Competitive Burden**

Requests for Production Nos. 7, 9, and 10 and Interrogatories Nos. 3-5 seek sweeping information regarding Nicholls's and Perrone's customers, prospective customers, and competitive activities. Nicholls properly objected on grounds of overbreadth, lack of proportionality, confidentiality, and—most importantly—prematurity in the absence of a reasonably particularized trade secret disclosure.

The discovery is premature. Tapis asserts claims under CUTSA and the DTSA but has failed to identify any trade secret with reasonable particularity. Until it defines the specific information allegedly misappropriated, it is not entitled to discovery predicated on those claims. *Social Apps*, 2012 WL 2203063, at *2–3*; Poynt*, 2019 WL 935499, at 3; *Commure*, 2025 WL 1150695, at *2–3*.

The requests are also untethered to any defined trade secret. Interrogatories 4 and 5 demand identification of all customers and prospective customers with whom Nicholls has had contact since leaving Tapis. RFPs 7–10 seek broad categories of Perrone's business development and competitive materials. None are limited to any specific customer list, pricing model, or proprietary compilation. Instead, they require wholesale disclosure of competitively sensitive information in the aerospace market.

This is precisely the misuse Section 2019.210 is designed to prevent—asserting vague misappropriation claims and then using discovery to obtain a competitor's confidential business relationships and strategy. *Loop AI Labs*, 195 F.Supp.3d at 1112. The identity of Perrone's customers and prospects is highly sensitive third-party information. Compelling disclosure, absent a defined trade secret and a demonstrated nexus to alleged misuse, would cause competitive harm

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

and far exceeds the appropriate bounds of discovery in this case. *See e.g.*, *Brown Bag Software v. Symantec Corp.* (9th Cir. 1992) 960 F.2d 1465, 1470 (recognizing that the right to discovery must be balanced against an the risk that confidential or trade secret information belonging to a competitor could be disclosed in the discovery process).

In short, these requests are premature, overbroad, and disproportionate, and they improperly attempt to leverage unsubstantiated trade secret claims to obtain confidential competitive information. The motion to compel should be denied as to RFPs 7–10 and Interrogatories 4–5.

### G. Conclusion

The motion must be denied. Tapis has not made an adequate trade secret disclosure under Code of Civil Procedure § 2019.210 and instead relies on a list of demonstrably nonconfidential and non-trade secret files to gain access to Nicholls's personal iPhone, computer, and cloud accounts, together with confidential information belonging to his current employer, Perrone.

**32**

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1

DATED:  March 2, 2026          BLANK ROME LLP


                               By:      /s/ Nicole Wentworth
                                    Travis K. Jang-Busby
                                    Nicole Wentworth
                               Attorneys for Defendant
                               TAPIS CORPORATION



DATED:  March 2, 2026          LAW OFFICES OF CORBETT H. WILLIAMS


                               By:      /s/ Corbett H. Williams
                                    Corbett H. Williams
                               Attorneys for Plaintiff
                               MATTHEW NICHOLLS


### SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4, I hereby certify that the contents of this document are acceptable to Corbett H. Williams, attorney for Plaintiff, and that I obtained Mr. Williams's authorization to file this document.


                                   /s/ Nicole Wentworth
                                   Nicole Wentworth

**33**

**JOINT STIPULATION PURSUANT TO LOCAL RULE 37**

153205.00001/156068807v.1